FILED
CLERK
7/26/2022 1:59 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA,

                     -against-

LAMAR TERRY,
    also known as "Monty"

                     Defendant
--------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

18-CR-560 (GRB)

**GARY R. BROWN, United States District Judge**:

      In this narcotics prosecution, defendant entered a guilty plea before a United States Magistrate Judge after the commencement of jury selection on May 9, 2022, which was promptly transcribed and accepted by Judge Hurley on May 11, 2022. Docket Entry ("DE") Nos. 123, 126. Meanwhile, defendant, who was represented by retained counsel at that time, had misgivings. He wrote a letter to Judge Hurley on May 11, 2022 asking to withdraw his plea, and then "put it in the door" of his cell so that it could be mailed to the Court. DE 129. The letter was postmarked May 13, 2022, date stamped May 16, 2022, and docketed May 17, 2022. *Id*. As a result of that letter, Terry's counsel – his fifth in this case – moved to be relieved as counsel on May 18, 2022. DE 131.

      Terry moves to withdraw his plea, seeking the benefit of the "prison mailbox rule" applicable to *pro se* litigants. DE 140. If that rule is applied to his letter, he argues, his request to withdraw preceded the district court's acceptance of the plea, and thus he is entitled to do withdrawal for "any reason or no reason" under Fed. R. Crim. P. 11(d)(1). *Id*. In the alternative, defendant requests to withdraw the plea based upon the demonstration of "a fair and just reason" under Fed. R. Crim. P. 11(d)(2)(B). DE 140 at 4. Because I find that defendant (1) is not entitled

1

the benefit of a rule applicable to unrepresented parties because he was represented at the relevant time (and throughout these proceedings), and (2) has failed to "show a fair and just reason for requesting the withdrawal," the motion is DENIED.

**BACKGROUND**

Some of the history of this case is set forth in Judge Hurley's opinion denying a motion by defendant for a non-jury trial, and ruling on fourteen items of pretrial relief, which are incorporated by reference herein. *United States v. Terry*, No. 18-CR-560 (DRH), 2020 WL 7343232, at *1 (E.D.N.Y. Dec. 14, 2020); *United States v. Terry*, No. 18-CR-560 (DRH), 2020 WL 7711863, at *1 (E.D.N.Y. Dec. 29, 2020). Subsequent to those determinations, a grand jury returned a superseding indictment on May 26, 2021. DE 77. The case was prepared and scheduled for trial to commence in June 2021, but jury selection was cancelled due to last-minute request by defendant to discharge his CJA attorney and appear with retained counsel. Electronic Order dated June 21, 2021. Four months later, retained counsel, Aaron Mysliwiec appeared. DE 100. Jury selection was scheduled for the second time for May 9, 2022. DE 101.

In the weeks leading up to trial, Mr. Mysliwiec negotiated a plea agreement by which the Government would agree to limit its sentencing recommendation to 15 years' incarceration, a significant concession given that defendant faced a Guidelines range minimum of 27 years. DE 139-3 ¶ 4. Defendant advised his counsel that he would prefer to reject that offer and proceed to trial. *Id.* at ¶ 5. Jury selection commenced, as scheduled, on May 9, 2022. DE 121; 139-3 ¶ 6. According to Mr. Mysliwiec, "[d]uring the morning session after the prospective jurors began answering questions, Mr. Terry passed me a post-it note that said 'tough crowd.'" DE 139-3 ¶ 6. During lunch, the defendant and his attorney conferred, discussing the demographics of the jurors, the attorney's assessment of the strength of the Government's case, and the likelihood of his

conviction on two of the counts. *Id.* at ¶ 6. According to his counsel, Mr. Terry then asked the attorney to inquire as to whether the Government's offer remained open. The prosecutor reduced the agreement to writing which enabled Messrs. Mysliwiec and Terry to review it together. *Id.* at ¶¶7-9. While he conclusorily asserts that he was "misguided and pressured by my lawyer into taking the plea," defendant does acknowledge – as does his attorney – that their conversation during the lunch break involved an assessment by counsel that there was a significant chance of Terry's conviction. DE 129 at 1 (noting "I was told by my lawyer that I had a 5 percent chance of winning trial"). Defendant agreed to take the plea offer.

Jury selection was suspended, and Magistrate Judge Tiscione heard his plea. During that proceeding, which began at 1:30 p.m., defendant, who testified under oath, averred that he

- had experienced no issues communicating with his attorney,
- understood the proceedings,
- was fully satisfied with his representation,
- reviewed the plea agreement, understood it, and that it accurately reflected the agreement he reached with the Government,
- no one threatened or forced him to plead guilty, and
- understood that both counsel had calculated a Guidelines estimate of 324-405 months.

DE 126 at 2, 5, 6, 10-11, 14, 15. He then allocuted to conspiring to distribute significant quantities of cocaine, heroin and crack. *Id*. at 16. According to Judge Hurley's minute order, "Defendant entered guilty plea, interrupting and terminating the selection process." DE 121.

The next day, defendant apparently began having second thoughts. On May 10, 2022, he wrote an email to his counsel – which he has supplied to the Court – stating "im not happy with

taking the plea i really feel i want to take it back im going to write the judge . . . ." DE 129 at 5. His attorney responded that evening, advising "I think that will hurt your case for the minimum. Let's focus on a strategy that could you get out in a total of 8.5 years or less." *Id.*[1]

Nevertheless, in a letter dated May 11, 2022 defendant advised Judge Hurley that "I want to withdraw my plea." DE 129.  He cited several reasons in support, mainly relating to discovery issues that had been vetted by his counsel.  *Id.*  Though the letter was postmarked May 13, 2022 and date stamped with the Court on May 16, 2022, defendant states in a declaration that "in the very early hours" of May 11, 2022 he had "placed it in the door so that it could be picked up by the officer" for mailing.  DE 140 at 6.  While the Government characterizes this affidavit as "self-serving," the Court will presume for the purposes of this motion that the collection of the letter by the prison officials preceded – if only by a number of hours – Judge Hurley's acceptance of the plea.

On May 18, 2022 after receipt of Terry's letter and discussing it with him, his counsel moved to be relieved as counsel.  DE 131 (noting that "Mr. Terry raised some issues about my advice and other legal disagreements, and it appears he intends to use those issues as a basis for moving to withdraw his guilty plea.").  Mr. Mysliwiec further advised that Terry "would like to proceed with new counsel," and requested a CJA appointment.  *Id.*  Judge Hurley granted the motion on May 19, 2022 and, based on a financial affidavit signed by the defendant, immediately appointed John Kaley as CJA counsel.  DE 132-4; DE 134.  Mr. Kaley made further filings – which

---

[1] The May 10 email exchange between defendant and his counsel on the day after the plea (and before its acceptance by Judge Hurley) undermines Terry's argument that he had no access to the email system because of a lockdown. *See, e.g.*, DE 144 at 4. Notably, Terry did not instruct his attorney to file a motion to withdraw the plea, rather he indicated an intent to write to the Judge himself, which his attorney cautioned him against.  While these seem like hair-splitting distinctions, defendant's entire argument turns on selectively drawing fine lines, to wit: Terry would like the Court to strictly construe the time frame for the acceptance of the plea while overlooking the fact that he was represented at the relevant time.

were thoroughly and thoughtfully done – in support of defendant's request to withdraw his plea. DE 140, 144.

This opinion follows.

**DISCUSSION**

*1. Inapplicability of the Prison Mailbox Rule*

Defendant's principal argument on this application stems from the notion that, under the "prison mailbox rule," his deposit of the letter onto the door of his cell constitutes the filing of a request to withdraw before the acceptance of the plea by the district court. Therefore, defendant argues, he is entitled to withdraw his plea for "any reason or no reason" under Fed. R. Crim. P. 11(d)(1). That rule is discussed in *Houston v. Lack*, 487 U.S. 266, 270 (1988), which noted that "[t]he situation of prisoners seeking to appeal without the aid of counsel is unique." After discussing the various options to ensure timely filing available to non-incarcerated parties, the Court observed "*[p]ro se prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them.*" *Id.* at 271 (emphasis added). Thus, the Court concluded, in the case of a jurisdictional appellate notice, "the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Id.* at 276.[2]

At the time defendant crafted his letter seeking withdrawal of his plea, he was represented by qualified counsel who remained fully engaged in the case. Representation by his attorney ceased only after (and indeed because of) plaintiff's written request to withdraw the plea was received by the Court. Furthermore, defendant shared some of his email communications with his

---

[2] The instant case involves a request for withdrawal of a plea, which remains timely under Rule 11 even if received after the acceptance of the plea. The interest at stake, rather than the jurisdictional preclusion discussed in *Houston*, is limited to the proper standard to apply in evaluating that request. Thus, though the Court does not reach the issue, the policy interests implicated in *Houston* apply with less force to the instant scenario.

5

counsel, providing a window into their interactions, revealing that his attorney continued to provide him reasonable advice even after defendant suggested he would withdraw his plea. DE 129 at 5. Thus, *Houston* is distinguishable from the case at bar, as defendant confronted none of the obstacles faced by *pro se* defendants.

As the parties concede, most other cases examining similar circumstances have reached the same result. *Cretacci v. Call*, 988 F.3d 860, 867 (6th Cir. 2021) ("The majority of circuits have declined to extend the prison mailbox rule to prisoners proceeding with counsel"); *United States v. Camilo*, 686 F. App'x 645, 646 (11th Cir. 2017) ("The mailbox rule was not intended to help prisoners with counsel, so it does not apply here"); *Rutledge v. United States*, 230 F.3d 1041, 1052 (7th Cir. 2000) ("we hold that the mailbox rule does not apply to prisoners who are represented by counsel"); *Nichols v. Bowersox*, 172 F.3d 1068, 1074 (8th Cir. 1999) ("The prison mailbox rule traditionally and appropriately applies only to pro se inmates who may have no means to file legal documents except through the prison mail system"); *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) ("To benefit from the mailbox rule, a . . . prisoner must be proceeding without assistance of counsel"). In this case, at defendant's request, the Court immediately appointed counsel to represent Mr. Terry. Thus, he was never *pro se*. As the Second Circuit has made clear, "[a] defendant has a right either to counsel or to proceed *pro se*, but has no right to 'hybrid' representation, in which he is represented by counsel from time to time, but may slip into *pro se* mode for selected presentations." *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016).

Thus, as the prison mailbox rule does not apply, defendant's request to withdraw his plea did not precede the acceptance of the plea by the district court. Therefore, the request to withdraw the plea is not subject to the standard articulated under Fed. R. Crim. P. 11(d)(1), which permits withdrawal "for any reason or for no reason."

*2. The Motion to Withdraw*

That the defendant does not qualify for the benefit of the prison mailbox rule and the concomitant withdrawal standard under Rule 11(d)(1) does not put the matter to rest.  The Court "may" permit withdrawal of a plea upon the demonstration of "a fair and just reason" under Fed. R. Crim. P. 11(d)(2)(B).  "[A] defendant has no absolute right to withdraw his plea of guilty." *United States v. Avellino*, 136 F.3d 249, 261 (2d Cir. 1998).

The determination ultimately falls within the Court's discretion, though such discretion must be exercised in the context of the gravity of such determinations.  "Society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (quotation marks and citation omitted).  That a defendant's request to withdraw a plea reflects "a change of heart prompted by his reevaluation of either the government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004) (citation omitted).

In considering a request to withdraw a guilty plea, a "district court should examine the amount of time elapsed between the plea and the subsequent motion to withdraw, and whether the defendant's motion to withdraw his plea asserted his innocence, as well as giving due regard to any prejudice the government might suffer as a result." *United States v. Karro*, 257 F.3d 112, 117 (2d Cir. 2001) (citations omitted).  Here, defendant rapidly requested withdrawal of the plea, a factor that weighs in favor of withdrawal.

Yet timeliness is the sole factor weighing in defendant's favor.  His submissions make

7

absolutely no claim of innocence (and his detailed allocution and other communications would belie any such claim). DE 126, 129, 135, 142-2. Instead, defendant proffers an array of specious and irrelevant legal arguments, some of which are undermined by defendant's own statements, taken under oath, during the plea colloquy and those of his prior counsel. *Id.*; *cf.* DE 139-3 ¶11 (former attorney describing the rejection of Mr. Terry's electronic evidence suppression theory by two independent experts). Defendant's justification for withdrawal arises to nothing more than buyer's remorse. Finally, while the Government has not articulated any prejudice beyond the burdens of preparing this case for trial for a third time,[3] this factor still weighs against granting the application.

On balance, therefore, the Court finds that the defendant has failed to articulate "a fair and just reason" for withdrawal of the plea, and therefore denies his application for withdrawal under Fed. R. Crim. P. 11(d)(2)(B).

**CONCLUSION**

Based on the foregoing, the Court DENIES the application for withdrawal of the plea. The Probation Department is directed to proceed with the preparation of a Presentence Report, and sentencing is hereby scheduled for December 2, 2022 at 10:30 a.m.

**SO ORDERED.**

Dated: Central Islip, New York
      July 26, 2022

                                                        /s/ Gary R. Brown
                                                        GARY R. BROWN
                                                        United States District Judge

---

[3] Defendant's frequent machinations concerning the substitution of counsel in this case are noteworthy and bear consideration. In examining the list of six attorneys who have assumed representation in this case (most at public expense), several could easily qualify as among the most qualified and talented members of the bar of this Court. That defendant insisted on substitution of counsel on the day of the first jury selection scheduled in this case, with prospective jurors in the building, tends to suggest that, in some part, defendant's efforts have been dilatory. The eleventh-hour plea negotiated during the second scheduled jury selection in this case contained some exceedingly favorable terms for defendant, including the Government's agreement to not advocate for a term of more than 15 years. These factors also weigh in favor of denying the motion.